## Case No. 70.

### ADAMS v. WILBUR.

[2 Sum. 266.][2]

Circuit Court, Rhode Island. Nov. 1835.

WILLS—OMISSION TO PROVIDE FOR CHILD—REPEAL OF STATUTE.

The statute of wills of Rhode Island of 1798, § 6, provided, "that any child, &c. not having a legacy given him in the will of his father or mother, shall have a proportion of the estate of his parents assigned unto him. as though such parent had died intestate." This section was repealed in 1803. Held, that a will, made in 1801, while the foregoing provision was in force, where the testator died in 1804, after it

---

[1][Reported by Hon. William Cranch, Chief Judge.]

[2][Reported by Hon. Charles Sumner.]

had been repealed, was not affected by it, but was fully operative to pass a good title to the devisee.

At law. Ejectment for lands in Newport, Rhode Island. [Judgment for plaintiffs.]

The parties agreed to a special statement of facts, as follows: Silas G. Huddy being seized of the demanded premises in fee by his last will and testament, dated, made and duly executed on the seventh day of December, A. D. 1801, and after his decease duly proved, and approved by the court of probate, devised the same premises in fee to his wife, Elizabeth Huddy, he, the said testator, then having no issue. That the said Silas and Elizabeth had a child born on the 31st day of July, A. D. 1802, which child died in infancy, before the said testator. On the 22d day of April, A. D. 1804, said Silas G. and his said wife Elizabeth, had another child born, named Silas G. Huddy, Jun., who survived both ·the testator and his said wife, and died July 8, A. D. 1818, in the fifteenth year of his age, intestate, and without issue. That Silas G. Huddy, senior, the testator, died at sea in the month of August, A. D. 1804. That said Elizabeth Huddy, widow and devisee of said Silas G. Huddy, senior, by her last will and testament, dated, made and duly executed on the 20th day of August, A. D. 1809, and after her decease duly proved and approved, devised the use and improvement of the premises to her mother, Ann Bently, until her (the testatrix's) son, the said Silas G., should be twenty-one years old, and then to her said son in fee; and if her said mother should die before her son arrived at that age, then to the said son in fee, and if said son should die without issue of his body, then to her said mother in fee., And afterwards, in the year 1809, said Elizabeth died, her said mother and son both surviving. The said Ann Bently, the mother, died in the year 1812, and the said Silas G. Huddy, the son, died July 8th, A. D. 1818, as before stated. That said Elizabeth Huddy had two sisters, one of whom, named Abigail Adams, now deceased, was the mother of the plaintiffs, who are the only surviving children of said Abigail, and are next of kin to the said Silas J. Huddy, Jr., of the blood of his mother, the said Elizabeth. If, upon this statement of facts, it shall be the opinion of the court that the plaintiffs are entitled to recover, then it is agreed that judgment shall be entered for them, the plaintiffs; otherwise, for the defendant.

The cause was argued by Hazard for plaintiffs, and by Turner and Pearce for the tenant.

Hazard. By the agreed statement of facts, upon which the parties have put this case, it appears that the defendant does not set up any adverse title, but leaves the plaintiffs to make out their title, to the demanded premises. And as to this, it is agreed, that the premises were vested in fee in Silas G. Hud-

dy, Jr., and came to him by devise from his mother, Elizabeth Huddy, and that said Silas died seized of the premises, July 8th, 1818, intestate, under age, and without issue, leaving the same to his heirs at law. It is also agreed, that the plaintiffs are next of kin to the said Silas G. Huddy, Jr., of the blood of said Elizabeth Huddy, his mother, and devisor.

The title of the plaintiffs depends upon the Rhode Island statute of 1798, (Dig. 1798, p. 287,) "directing the descent of intestate estates," &c.; by the 1st section of which statute, it is provided, that if such right, title and interest to such real estate, came by descent, gift, or devise from the parent or other kindred of the intestate, and such intestate die without issue, the same shall vest in and be divided equally amongst the next of kin to the intestate, and those who legally represent them, if any of them be dead, of the blood of the person from whom such right, title, or interest came or descended. This is the title under which the plaintiffs claim. This title is good, unless defeated by the provision contained in the 6th section of the Rhode Island statute of wills of 1798. It is unnecessary to consider what application that provision might have (if still in force) to the present case, since all that part of the said 6th section was repealed by an act of the legislature, passed expressly and solely for that purpose, June 4, 1803, (more than a year before the death of S. G. Huddy, senior, and fourteen months before the birth of his son), entitled, "An act to repeal part of the 6th section of the act, entitled, 'An act prescribing the manner of devising lands, tenements and hereditaments, and of disposing of personal estate by will.'" This repealing act is contained in the "Supplement to the Digest of the Laws in 1798," and remained in full force until the last revision of the laws in 1822, when the general acts relating to devises and wills were revised, and the act now and ever since in force was passed.

Turner & Pearce for the tenant.

The question now presented to the court we conceive to be this, did the statute of 1803, repealing in part the statute of 1798, under which the will was made in 1801, while the statute of 1798 was in full force, and unrepealed, so far act retrospectively as to change the legal destination of real estate under that will? In order to entitle the plaintiffs to recover in this action, it is incumbent on them successfully to maintain the affirmative of this question; their case depends entirely on their so doing. Yet the argument is rather implied than expressed, and as it is supported and enforced by no authorities introduced, if available it must be considered as depending upon the application of general principles of law, independent of authorities. Every will, in a certain sense, is inchoate and imperfect, until the death of the testator; but it is so considered only in reference to the estate that will or will not pass by it; and not at all in reference to the law by which it shall be construed, controlled and governed. The preparation and the legal execution of a will, are the acts of the party—the testator himself. When every ceremony and requisite on his part has been performed, the instrument is perfect and complete, so far as human agency and human law are concerned; and the only remaining act necessary to its full and complete consummation, is the act of God alone, the death of the testator. This is the only sense, and utmost extent, in which a will, duly executed according to the requirements of law, as the law stands at the time of its execution, ever has been, or can be considered as inchoate. We are not aware of any legal principle, under which a different rule has been applied, in this respect, to wills, than is applied to deeds, bonds, mortgages, or any other contracts or writings, whether under seal or not; in relation to all which we deem the rule to be, that effect shall be given to them, according to the law, as it stood at the time of their execution. Upon the ground taken by the plaintiffs, the act of June 4, 1803, would, in this case be entirely retrospective; and although we shall not contend, that the legislature may not pass, and have not passed retrospective laws, in contradistinction to ex post facto laws, yet we feel warranted by authorities in saying, that if such was the intention of the legislature, at the time the act was passed, it must have been clearly expressed in the act itself; and cannot be legally presumed. Now does the act of June 4, 1803, contain any expression giving it a retroactive operation on wills, that had been then already made? The language and the intention are evidently prospective, and can be considered as applicable to such wills only as should thereafter be made; and not to those that had been already executed. In Gillmore v. Shooter, 2 Mod. 310, the court said, in giving judgment for the plaintiff: "It could not be presumed, that the act had a retrospect to take away an action to which the plaintiff was then entitled; for if a will had been made before the 24th of June, and the testator had died afterwards, yet the will had been good, though it had not been in pursuance of the statute." The same case is cited in Couch v. Jeffries, 4 Burrows. 2461, and is also reported in 2 Show. 16, 2 Lev. 227, 1 Ventr. 330, and T. Jones, 108. The law had been such in Rhode Island ever since the passage of 12 Wm. III. c. 7. The legislature of Rhode Island, in the same year passed an act, on the 30th day of April, 1700, entitled "An act for putting in force the laws of England, in all cases where no particular law of this colony hath provided a remedy," providing as follows: "That in all actions, matters, causes and

things whatsoever, where no particular law of this colony is made to decide and determine the same, that then, and in all such cases the laws of England shall be put in force, to issue, determine and decide the same; any usage, custom or law to the contrary notwithstanding." Dig. R. I. Laws 1744, p. 28. The act here recited, adopted the English statute of 12 Wm. III. c. 7, as the law of Rhode Island, and it continued in force until the revision of 1798, when the statute of this state was passed, copied from that which had been passed in Massachusetts in 1784; and although both the statutes of Massachusetts and Rhode Island omit the preamble to the section in the English statute, yet it was decided, [Terry v. Foster,] 1 Mass. 150, that it was entitled to consideration under a new statute in pari materia. The testator then, in this case, when, on the 7th December, 1801, he made his will, may be fairly presumed to have known what the law then was, and probably acted under the advice of counsel; if so, he must have been aware, that our statute not only amply secured and provided for children subsequently born, who were, technically speaking, posthumous, but also for all such as might be born after the will was made, and before his own death. To give the will, therefore, at this time a different construction, or rather a different effect, would be to destroy the presumed intent of the testator, and would prove both inconvenient and unjust. See Whitman v. Hapgood, 10 Mass. 437; Inhabitants of Somerset v. Inhabitants of Dighton, 12 Mass. 383; Church v. Crocker, 3 Mass. 17; Inhabitants of Medford v. Learned, 16 Mass. 215; Wild v. Brewer, 2 Mass. 570; Bigelow, Dig. p. 741, arts. 14, 15; The Saunders, [Case No. 12,372.]

The argument for the defendant might be illustrated by a great variety of examples; one or two only shall be mentioned. Suppose a will had been made before the statute was passed, requiring its execution and publication before three witnesses, and it had been witnessed by two witnesses only, and the testator had not died until after the enactment of the statute; would it be argued in such a case, that the will was void? Again, the legislature of Rhode Island have recently passed an act, requiring all bills of sale that are intended for security, and to operate as mortgages, to be recorded in the same way that deeds of real estate are; suppose such a bill of sale had been executed prior to the passing of that law, and that the term of payment did not expire by the condition of the deed, until after it became a law, it is not supposed, that if such bill of sale were not recorded, that therefore it would be void against attaching creditors, or others.

Before STORY, Circuit Justice, and PITMAN, District Judge.

STORY, Circuit Justice, delivered the opinion of the court. The testator (Silas G. Huddy) made his will in 1801, having then no issue; and thereby devised the premises in fee to his wife. He afterwards died, in August, 1804, leaving his wife, and a son, who was born in April, 1804; and who afterwards died, in July, 1818, intestate, and without issue. The wife died in 1809; and the plaintiffs claim, as heirs of the son, ex parte materna; and the defendant claims, as heir of the son, ex parte paterna.

The statute of wills of Rhode Island, of 1798, in the sixth section, provides, "That every child, or children, or their legal representatives, in the case of their death, not having a legacy given him, her, or them, in the will of their father or mother, shall have a proportion of the estate of their parents assigned unto him, her, or them, as though such parent had died intestate;" with a proviso, not important to be mentioned in the present case. This section was in force at the time, when the testator's will was made, in 1801; but, at the time of his death, in 1804, it had been repealed (act of 4th June, 1803). If it had been in force at the time of the testator's death, it is admitted, that the plaintiffs would have no title to the estate; as it would have vested in the son by descent, ex parte paterna, in virtue of the section. The real question, therefore, between the parties, is, whether in the intermediate repeal defeated the title, which the son would otherwise have taken. Our opinion is, that it did. The will was good and operative to all intents and purposes to pass the whole of the premises to the wife, subject only to be defeated by any title, which might accrue to the son under the section above quoted. The will was ambulatory during the life of the testator; and no title could accrue to the son until the death of the testator. If the son had died during the life-time of the testator, without issue, it is clear, that the will would have had precisely the same effect, as if he had never been born. To give the son then any title in the estate, two things must have concurred; first, that he should have survived the testator; and, secondly, that at the time of the death of the latter, there should have been some law in force, which should confer a title on him. He is to take, not by the bounty of the testator, but by the operation of law. Now, at the time when, if ever, this title was to accrue, there was no act in force, which conferred any such title upon him. It had been repealed; and the repeal put an end to the possibility of his acquiring any title under it. The argument of the defendant's counsel seems to rest mainly on the foundation, that an inchoate title was created in the son by the execution of the will, which ought not to be defeated by relation by the subsequent repeal. But we take the law to be, that no inchoate title vested at all by the execution

of the will; and that the son's title, if any, must first accrue on the death of the testator. Having said thus much upon the point. it appears to me, that there is no farther room for argument upon it.

Our judgment is, that the defendant is [plaintiffs are] entitled to recover the premises sued for.